# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("**Agreement**") is entered into by and between Stacy L. Schmidt ("**Ms. Schmidt**") and Madison Emergency Physicians, S.C., a Wisconsin corporation, ("**MEP**"). Ms. Schmidt and MEP are referred to herein collectively as the "**Parties**."

WHEREAS, on February 6, 2025, Ms. Schmidt filed a complaint in the United States District Court for the Western District of Wisconsin (the "Court") asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the Wisconsin Wage Payment and Collection Laws, Wis. Stat. §§ 103.001 et seq., 104.01 et seq., 109.01 et seq. and Wis. Admin. Code§§ DWD 272.001 et seq. and 274.01 et seq. ("WWPCL"), captioned Stacy Schmidt, individually and on behalf of those similarly situated, v. Madison Emergency Physicians, S.C. Case No. 25-cv-87 (the "**Lawsuit**");

WHEREAS, in the Lawsuit, Ms. Schmidt alleges that MEP: (1) failed to compensate her and all other similarly situated hourly-paid employees for all hours worked and work performed, including overtime compensation at one-and-one-half times their regular rate of pay; and (2) breached Ms. Schmidt's employment contract by terminating without cause, and failing to pay Ms. Schmidt for her 90-day notice period, as outlined and defined by the employment contract,;

WHEREAS, MEP has denied and continues to deny allegations in the Lawsuit and any and all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit.

WHEREAS, Ms. Schmidt has moved for conditional certification of an FLSA collective, which was opposed by MEP, and that motion is currently pending before the Court;

WHEREAS, without admitting or conceding any liability or damages whatsoever, MEP and Ms. Schmidt have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Lawsuit;

WHEREAS, the Parties agree to cooperate and take all reasonable steps necessary and appropriate to obtain judicial approval of this Agreement, to effectuate all aspects of this Agreement, and to dismiss this action with prejudice upon approval; and

WHEREAS, the Agreement is intended to embody all of the settlement terms and conditions and shall constitute the complete agreement between the Parties.

NOW, THEREFORE, in consideration of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Ms. Schmidt and MEP agree as follows:

1. **Execution.** Ms. Schmidt will execute and deliver to MEP (via counsel at Husch Blackwell LLP) a copy of this Agreement and the General Release and Statement ("**Release**"), which is attached hereto as <u>Attachment A</u> and which is incorporated herein. MEP will execute and deliver to Ms. Schmidt's counsel (Hawks Quindel, S.C.) a counter-signed copy of this Agreement within two (2) business days of Ms. Schmidt's delivery of her executed

Agreement and Release. Ms. Schmidt agrees to waive and give up any benefit conferred on her by any order or judgment issued in connection with any proceeding filed against the Released Persons regarding any claim released in this Agreement and/or Attachment A.

2.  **Settlement Payment.** Within fifteen (15) calendar days of the Approval Order and Judgement (defined below) being entered by the court, provided that the Revocation Period (defined below) has elapsed and Ms. Schmidt does not revoke this agreement, MEP, in full and complete satisfaction of any and all claims that Ms. Schmidt may have against the Released Persons, will pay Ms. Schmidt in the total amount of Fifty Thousand and 0/100 Dollars ($50,000.00) ("**Settlement Payment**"), to be paid as follows:

    a.  MEP will pay Ms. Schmidt a pre-tax total of Twelve Thousand Five Hundred and 00/100 Dollars ($12,500.00) payable in a lump sum amount no later than fifteen (15) calendar days following the court's execution of the Approval Order and Judgment (defined below) less applicable tax withholdings. An IRS Form W-2 will be issued to Ms. Schmidt reflecting this payment at the time and in the manner required by law;

    b.  MEP will pay Ms. Schmidt a total of Twelve Thousand Five Hundred and 00/100 Dollars ($12,500.00) payable in a lump sum amount no later than fifteen (15) calendar days following the court's execution of the Approval Order and Judgement (defined below), less applicable tax withholdings. An IRS Form 1099 will be issued to Ms. Schmidt reflecting this payment for liquidated damages at the time and in the manner required by law;

    c.  Within fifteen (15) calendar days following the court's execution of the Approval Order and Judgment (defined below), MEP will issue and deliver a check made payable to Hawks Quindel, S.C. FEIN 39-2024202, in the amount of Twenty-Five Thousand and 0/100 Dollars ($25,000.00) in full and complete settlement of all claims for attorneys' fees and costs. An IRS Form 1099 will be issued reflecting this payment at the time and in the manner required by law. Ms. Schmidt's counsel is responsible for all federal, state, and local tax liabilities that may result from the payment of such attorneys' fees, and MEP shall bear no responsibility for such tax liabilities.

    d.  The commitments contained in this Paragraph 2 are the only direct monetary payments MEP will make to or on behalf of Ms. Schmidt in exchange for her undertakings in connection with this Agreement. These payments include and are in full satisfaction of any other payments MEP may owe Ms. Schmidt and are subject to Ms. Schmidt's compliance with the conditions outlined in this Agreement; and

    e.  The payment referred to in Paragraphs 2 (a)-(c)., above, shall be delivered to the law offices of Hawks Quindel, S.C., Attn. Atty. Natalie Gerloff, 409 E Main St, Madison, WI 53703.

    f.        Within three (3) calendar days of MEP delivering the counter-signed Agreement to Ms. Schmidt's counsel, but no later than October 31, 2025, Ms. Schmidt will file a Joint Motion for Approval of the Settlement and Dismissal of the Lawsuit with the Court ("**Approval Order and Judgment**"). The Parties shall seek an order and final judgment entered by the Court approving the terms of this Agreement, including the Release, payments to Ms. Schmidt, and payments of attorneys' fees and costs, and dismissing the action in its entirety with prejudice as to Ms. Schmidt and retaining jurisdiction only for the purpose of enforcing the payment.

    g.        The Parties agree that this settlement is contingent on the Court's approval of this Agreement in its entirety. Should the Court not approve the Agreement in its entirety, the terms of the Agreement and Release will be null and void. In such event, the Parties agree to continue to negotiate in good faith over an alternative settlement.

3.    **Tax Indemnification.**  Ms. Schmidt will be solely responsible for the payment of any local, state, or federal tax obligations that may result from her receipt of the Settlement Payment or the apportionment of the Settlement Payment in Paragraphs 2(b) – (c) above. Ms. Schmidt agrees to fully indemnify and hold harmless MEP: (i) from any and all amounts that MEP may be required to pay as a result of Ms. Schmidt's failure to pay any tax liabilities arising from the Settlement Payment when due; (ii) from any failure by MEP to withhold any amount from the Settlement Payment, including, without limitation, any amounts that Ms. Schmidt is required to pay to any local, state, or federal taxing authority; (iii) from any tax liability, interest, or penalties assessed against MEP; and (iv) from all attorneys' fees and costs incurred by MEP as a result.

4.    **Non-Disclosure.**  Ms. Schmidt and MEP further represent, warrant, and agree to the following:

    a.        MEP will not disclose, directly or indirectly, the existence or terms of this Agreement to any third party; provided, however, that MEP may disclose the existence or terms of this Agreement to its shareholders, employees with a legitimate business need to know, as well as its tax advisors, financial advisors and attorneys. If MEP receives any inquiry about this Agreement and/or any claims, charges, suits or complaints Ms. Schmidt made against MEP from a third party not identified in the preceding sentence, MEP shall state only that "the matter is resolved" and provide no other information, comment or opinion. This provision, however, shall not prevent MEP from disclosing such matters in testifying in any hearing, trial or other legal proceeding where it is required to do so, including but not limited to any investigation or proceeding under Paragraph 8, below;

    b.        Ms. Schmidt will not disclose, directly or indirectly, the existence or terms of this Agreement to any third party; provided, however, that Ms. Schmidt may disclose, after obtaining a promise of confidentiality consistent with the confidentiality required of Ms. Schmidt under this Agreement, the existence or terms of this

    Agreement to her "**Immediate Family**" (defined as her spouse, parents, children and parents-in-law), as well as her tax advisors, financial advisors and attorneys. If Ms. Schmidt or any of her Immediate Family receives any inquiry about this Agreement and/or any claims, charges, suits or complaints Ms. Schmidt made against MEP from a third party not identified in the preceding sentence, Ms. Schmidt or her Immediate Family shall state only that "the matter is resolved" and provide no other information, comment or opinion. This provision, however, shall not prevent Ms. Schmidt or her Immediate Family from disclosing such matters in testifying in any hearing, trial or other legal proceeding where they are required to do so, including but not limited to any investigation or proceeding under Paragraph 8, below;

  c. Ms. Schmidt will take reasonable steps to cause her Immediate Family, attorneys (including, without limitation, Hawks Quindel, S.C.), her tax advisors, and financial advisors to refrain from publicizing or otherwise referencing, either orally or in writing, in any publication, literature, document, website, electronic posting or other communication, the fact of this settlement, any aspect of the settlement negotiations between the parties, the existence of the terms of this settlement, the terms of this settlement or any portion of the Settlement Documents (defined below);

  d. In the event that either party breaches any provision of Paragraph 4, the non-breaching party may suspend further performance under this Agreement and obtain any injunctive relief that may be provided. As determined by a court of competent jurisdiction, the prevailing party in any action for a breach of this Agreement shall be awarded reasonable attorneys' fees and costs associated with enforcement of this Paragraph 4; provided, however, that the Release attached as Attachment A to this Agreement shall remain in effect regardless of any breach of this Agreement; and

  e. The Parties are relying on the representations in this Paragraph 4 and would not enter into this Agreement without them.

5. **Waiver of Reinstatement.** Ms. Schmidt will not apply for employment or accept an assignment or placement with any of the Released Persons;

6. **Additional Representations of Ms. Schmidt.** Ms. Schmidt acknowledges and agrees that:

  a. She has no notice or knowledge of any actual or alleged compliance problems or violations of applicable federal, state and local law by MEP during her employment, other than those alleged in the Lawsuit;

  b. She has not been denied the right to schedule or take a leave of absence covered under the Family and Medical Leave Act or applicable state law, has not been retaliated against for requesting or using such leave, and no one has interfered with her right and ability to use such leave;

4

  c. She is the sole and lawful owner of all rights, title and interest in and to all matters released in Attachment A, and she has not assigned or transferred, or purported to assign or transfer, any of such released matters to any other person or entity.

7. **Neutral Reference.** Ms. Schmidt shall direct any person or entity seeking information about her employment by MEP to Michael Foley, M.D. (or, if applicable, his successor(s) in rights and responsibilities to and on behalf of MEP). Notwithstanding any other provision of this Agreement, Ms. Schmidt agrees and acknowledges that any and all consequences arising from her failure to direct such persons or entities as provided in this Paragraph 7 shall be Ms. Schmidt's sole responsibility and shall not create any liability for MEP or serve as the basis for a breach of this Agreement. If Michael Foley, M.D. (or his successor(s)) is contacted by a prospective employer or other third-party seeking information about Ms. Schmidt, Michael Foley, M.D. (or his successor(s)) shall respond with only Ms. Schmidt's dates of employment, job title and status (full-time, part-time, temporary, etc.).

8. **Non-Admission of Liability.** This Agreement is entered into for the purpose of concluding all matters between MEP and Ms. Schmidt based upon defined rights and obligations. Neither this Agreement nor its contents are an admission of any liability by the Released Persons or Ms. Schmidt. Any such liability has been and continues to be expressly denied.

9. **Acknowledgement**. Ms. Schmidt acknowledges that:

  a. She has read this Agreement and the General Release and Statement (Attachment A) (collectively, the "**Settlement Documents**"), understands their contents and agrees to their terms and conditions of her own free will. She may accept this Agreement by signing and dating it and Attachment A where indicated and returning the signed and dated Settlement Documents, via electronic mail, mail, hand delivery, or overnight delivery, to Tom O'Day, Husch Blackwell LLP, 33 East Main Street, Suite 300, Madison, Wisconsin 53703;

  b. She has been advised and is hereby advised by MEP to consult with an attorney prior to signing the Settlement Documents and has, in fact, consulted with an attorney;

  c. She understands that the Settlement Documents include a final general release (including a release of all claims under the Age Discrimination in Employment Act and Fair Labor Standards Act);

  d. She has been given at least twenty-one (21) calendar days to consider whether to sign the Settlement Documents;

  e. She has seven (7) calendar days after signing the Settlement Documents within which to revoke her acceptance of them ("**Revocation Period**"). This Agreement shall not become effective or enforceable until the seven-day Revocation Period has expired. Such revocation will not be effective unless written notice of the revocation is directed to and received by via electronic mail, mail, hand delivery, or overnight delivery, directed to and received by Tom O'Day, Husch Blackwell

    LLP, 33 East Main Street, Suite 300, Madison, Wisconsin 53703, via electronic mail, mail, hand delivery, or overnight delivery; and

 f. No promise, inducement or agreement not herein expressed has been made regarding the Settlement Documents, that she has executed this Agreement freely and voluntarily, with full knowledge of all material facts after independent investigation and without fraud, duress or undue influence of any kind or nature whatsoever.

10. **Governing Law.** The validity, interpretation and effect of this Agreement is made and entered into in the State of Wisconsin, and shall be construed and enforced under and pursuant to the laws of Wisconsin (without regard to conflicts of law doctrine).

11. **Severability.** The Parties have attempted to create an agreement that is lawful and enforceable in all respects. In the event that any provision of this Agreement is found or deemed to be illegal, invalid or unenforceable, whether in whole or in part, such illegal, invalid, or unenforceable provision shall be stricken from this Agreement, though any such action shall not affect the enforceability of the remaining legality, validity and enforceability of the remaining provisions

12. **Amendments.** This Agreement may not be modified, altered, or changed, except in a writing signed by the Parties wherein specific reference is made to this Agreement.

13. **Waiver of Right to Appeal Approval Order and Judgment.** Provided that the Approval Order and Judgment are consistent with the terms and conditions of this Agreement in all material respects, Ms. Schmidt, Ms. Schmidt's counsel, and MEP all hereby waive any and all rights to appeal from the Approval Order and Judgment, including all rights to any post-judgment proceedings, such as a motion to vacate or set-aside judgment, a motion for a new trial, and any extraordinary writ, and the Approval Order and Judgment will become final and non-appealable at the time they are entered. The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

14. **Headings.** The headings used for the Paragraphs of this Agreement are solely for the convenience of the Parties and shall not define, limit, extend, or describe the scope of this Agreement or any of its provisions.

15. **Electronic Signatures.** This Agreement may be executed in one or more counterparts by electronic means, including DocuSign and/or portable document format (PDF), and exchanged by hand, messenger, or PDF as an email attachment, and any such signature exchanged shall be deemed an original signature for purposes of this Settlement Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Settlement Agreement exchange all signed counterparts.

16. **Entire Agreement.** The Settlement Documents constitute the entire agreement between the Parties. Any and all prior or contemporaneous agreements, discussions or understandings that are not embodied in the Settlement Documents, whether oral or written, are of no force or effect. Moreover, the terms of this Agreement may not be modified, except by written

6

agreement signed by the Parties to this Agreement. This Agreement shall inure to the benefit of MEP and/or its successors and assigns.

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement as of the date listed below their signatures.

**STACY L. SCHMIDT**

DocuSigned by:
*STACY SCHMIDT*
854478461563422...

Stacy L. Schmidt

Date: 10/27/2025 | 1:44:24 PM PDT

**MADISON EMERGENCY PHYSICIANS, S.C.**

DocuSigned by:
*Michael Foley, M.D.*
63112A4F16764E0...

By: Michael Foley, M.D.

Its: President & CEO

Date: 10/27/2025

**HAWKS QUINDEL, S.C.**

As to paragraph 4(c):

DocuSigned by:
By: *David C. Zoeller*
FDD6F625DFB24DA...
David C. Zoeller

Its: DCZ

Date: 10/27/2025 | 1:48:48 PM PDT

7

**Attachment A**

**GENERAL RELEASE AND STATEMENT**

I, Stacy L. Schmidt ("**Ms. Schmidt**"), upon the entry of the Approval Order by the Court, in consideration of the amounts paid to me and/or on my behalf and other benefits provided to me by Madison Emergency Physicians, S.C. ("**MEP**"), pursuant to the attached Settlement Agreement, the adequacy and receipt of which is hereby acknowledged, do hereby release and discharge MEP their parents, subsidiaries, affiliates and other related entities, and their officers, directors, managers, members, shareholders, attorneys, insurers, employees and any other agents (collectively, the "**Released Persons**"), from any and all causes of action, claims, demands, or liabilities of any kind or character whatsoever, whether known or unknown, which I either have had or now have against the Released Persons, or any of them, for or related in any way to anything occurring from the beginning of time to the present date. Without limiting the generality of the foregoing, this Release applies to any and all claims, causes of action, demands, or liabilities that I have had or now have:

1. Under or pursuant to the Occupational Safety and Health Act, as amended, Equal Pay Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, as amended, the Americans with Disabilities Act, as amended, Chapters 103, 109 and 111 of the Wisconsin Statutes, Health Care Worker protection and anti-retaliation laws, 42 U.S.C. §§ 1981, 1983 and 1985, the Rehabilitation Act of 1973, Executive Orders 11246 and 11375, and all other state and local wage/hour and wage payment laws or any other statute, rule, regulation, or executive order regarding wages, benefits, discrimination, or harassment in employment;

2. Under or pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and the Wisconsin Wage Payment and Collection Laws, Wis. Stat. §§ 103.001 et seq., 104.01 et seq., 109.01 et seq. and Wis. Admin. Code§§ DWD 272.001 et seq. and 274.01 et seq.

3. Concerning my employment with the Released Persons;

4. For wrongful termination of employment;

5. For breach of contract, whether express or implied;

6. For libel, slander, defamation, damage to reputation, intentional or negligent infliction of emotional distress, or other tortious conduct;

7. This Release is effective regardless of whether I cash a Settlement Payment check and/or receive Settlement Payment from MEP;

8. This Release excludes claims that cannot be released by law and claims to vested benefits, workers' compensation, or unemployment benefits; and

9. Regarding any right that I might have to current or future employment with the Released Persons. In that regard, I affirm that I have no further desire for employment with, will not apply for employment with and will not accept an assignment or placement at any of the Released Persons.

DocuSigned by:

*Stacy Schmidt*

Stacy L. Schmidt

Date: 10/27/2025 | 1:44:24 PM PDT

8